IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JULIE ANN TREGO, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:15-CV-00182-O-BL |
| § | |
| NANCY A. BERRYHILL[1], § | |
| Acting Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Julie Ann Trego seeks judicial review of the decision of the Commissioner of Social Security, who denied her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The United States District Judge reassigned the case to this court pursuant to 28 U.S.C. § 636(c). The parties have not unanimously consented to proceed before a United States Magistrate Judge. After considering the pleadings, briefs, and administrative record, the undersigned recommends the Commissioner's decision be affirmed and Trego's case dismissed.

## I. STATEMENT OF THE CASE

Trego filed applications for DIB and SSI on May 20, 2010. Those applications were denied initially on October 28, 2010 and after reconsideration on March 1, 2011. Trego requested a hearing, which was held before an Administrative Law Judge on April 3, 2012. The ALJ issued a decision on June 19, 2012 finding Trego not disabled. Trego applied to the Appeals Council for review, and her claim was remanded for further consideration on November 13, 2013. An ALJ

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), the Court automatically substitutes her as the named defendant.

held a second hearing on April 7, 2014 and issued a decision on July 22, 2014 again determining Trego was not disabled.

Specifically, the ALJ found during step one that Trego had not engaged in substantial gainful activity since January 15, 2010. (Doc. 16-3, 16). At step two, the ALJ determined Trego had the severe impairments of degenerative joint disease, degenerative disk disease, depression, "diagnosed anxiety versus post-traumatic stress disorder with panic attacks and agoraphobia," and obesity. (Doc. 16-3, 16). In the third step, the ALJ found those severe impairments did not meet and were not equivalent to any listed impairments. (Doc. 16-3, 16). The step three analysis continued, with the ALJ finding Trego retained the residual functional capacity to perform sedentary work with limitations to superficial contact with coworkers and supervisors, only simple instructions and decision-making responsibility, but the ability to concentrate for extended periods of time and to accept instruction and respond appropriately to changes in a work routine. (Doc. 16-3, 33-34). At step four, the ALJ determined she could not return to past relevant work, and at step five accepted vocational expert testimony that there were sufficient jobs Trego could perform and found her not disabled. (Doc. 16-3, 34-36).

Trego applied to the Appeals Council, which denied review on January 7, 2015. Therefore, the second ALJ's decision is the Commissioner's final decision and properly before the court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) ("[T]he Commissioner's final decision includes the Appeals Council's denial of [a claimant's] request for review.").

## II. FACTUAL BACKGROUND

According to her pleadings, testimony, and the administrative record, Trego was 38 years old and living with her husband and a roommate at the time of the second administrative hearing.

She has experience working in administrative assistant positions and as a cashier. She believes her physical and mental impairments render her disabled under the Act.

## III. STANDARD OF REVIEW

A person is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423 (d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b).

To evaluate a disability claim, the Commissioner follows a

> five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

This court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the proper legal standards. *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir.

2015) (quoting *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton*, 209 F.3d at 452.

The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton*, 209 F.3d at 452.

## IV. DISCUSSION

Trego raises four issues on appeal. She claims the ALJ erred in failing to consider her fibromyalgia a medically determinable impairment, evaluating medical opinion evidence, and evaluating her symptoms under the applicable regulations, and that correcting these errors would result in a more restrictive RFC.

### A. Fibromyalgia as a medically determinable impairment

Trego asserts the ALJ erred in finding "there is insufficient evidence to conclude that the claimant has a medically determinable impairment of fibroymyalgia." (Doc. 19, 5; Doc. 16-3, 29). Social Security regulations state that the Administration will find a medically determinable impairment of fibromyalgia when the claimant meets three criteria: a history of widespread pain, at least 11 tender points during a physical examination, and "evidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p, 2012 WL 3104869 at *2-3. The

ALJ found that "the clinical evidence fails to establish that other disorders ... which might account for the claimant's musculoskeletal pain complaints have been excluded ...," while Trego points to a treatment note from a rheumatologist diagnosing her with fibromyalgia and excluding other diagnoses. (Doc. 16-3, 29; Doc. 19, 6 citing Doc. 16-11, 2-6).

As the Commissioner notes, even if Trego meets the SSR 12-2p criteria, she must also show that this error is prejudicial. An error is harmless if correcting it would not produce a different result and prejudicial if it would. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time. Remanding this case ... would produce the same result while wasting time and resources.") (internal citation omitted). So, Trego needs to show that classifying the fibromyalgia as a medically determinable impairment under SSR 12-2p would produce a different result. As fibromyalgia is not listed as an impairment in the appendix, and Trego does not argue it is equivalent to a listed impairment, she instead needs to show it is severe under *Stone v. Heckler* and would result in a different RFC. *Mays*, 837 F.2d at 1364; 752 F.2d 1099, 1101 (5th Cir. 1985).

A medically determinable impairment is severe if it would be expected to interfere with the ability to work. *Stone*, 752 F.2d at 1101. Trego alleges that as a consequence of declining to consider the fibromyalgia as a medically determinable impairment, the ALJ "failed to take into account the pain and fatigue caused by" the fibromyalgia. (Doc. 19, 6). Trego cites a form prepared by a nurse practitioner which indicates – by yes/no responses – that she suffers from widespread pain which prevents her from "be[ing] able to maintain the concentration needed to complete tasks in a work environment" for any more than 15 minutes at a time. (Doc. 16-13, 36-41). Trego complains that this opinion, if considered in the context of her fibromyalgia as a medically determinable impairment, would result in a more restrictive RFC. (Doc. 19, 9).

The ALJ stated he assessed her RFC after considering her subjective complaints, including chronic widespread pain. (Doc. 16-3, 34). Even if the fibromyalgia were considered a medically determinable impairment, the ALJ's decision indicates he considered the symptoms Trego says were unaccounted for. (Doc. 16-3, 34). Parsing the record and resolving conflicts in the evidence is the purview of the Commissioner, and the ALJ heard the subjective evidence, considered it alongside the remainder of the evidence, and determined the evidence from other medical sources outweighed the opinion of the nurse practitioner and Trego's subjective complaints regarding the fibromyalgia and related pain. That finding is entitled to deference so long as it is supported by substantial evidence. *Masterson*, 309 F.3d at 272. Trego's duty at the hearing was to show affirmatively the fibromyalgia was assessed by an acceptable medical source and would impose limitations on her ability to work, and her duty now is to show that there is not substantial evidence supporting the ALJ's determination she did not meet that burden. Trego has failed to show any prejudicial error in the ALJ's determination that fibromyalgia should not be considered a medically determinable impairment.

### B. Opinion Evidence

Trego also claims the ALJ failed to properly evaluate evidence offered by three medical sources: her treating psychiatrist, a nurse practitioner, and a state agency medical consultant. Social Security regulations provide that acceptable medical sources include licensed physicians, and defines nurse practitioners as "other health care providers" who may provide evidence "to show the severity of the individual's impairment(s) and how it affects [their] ability to function[,]" but that only evidence from acceptable medical sources may serve to establish an impairment. SSR 06-03P, 2006 WL 2329939 at *1-2.

### 1. Dr. Brown-King

Trego believes the ALJ improperly discounted the opinion of Dr. Brown-King, her treating psychiatrist, despite setting out the six factors of 20 C.F.R. § 404.1527(c) which . (Doc. 19, 11). Those six factors are examining relationship, treatment relationship, supportability, consistency, specialization, and an umbrella element including the source's familiarity with disability standards and the case record. 20 C.F.R. § 404.1527(c). Trego specifically claims the ALJ essentially rejected the opinion of Dr. Brown-King by considering formal mental status evaluations the only "objective evidence" and discounting the remainder of the evidence supplied by Dr. Brown-King. (Doc. 19, 11).. The ALJ's decision states he "considered the ... length of the treating relationship and the frequency of examination[,] ... the nature and extent of the treating relationship[,] ... the supportability of the opinion with medical signs and laboratory findings, ...the consistency of the opinion with the record as a whole[,] ... and other factors[.]" (Doc. 16-3, 24). He determined after this analysis "it is clear that the psychiatrist virtually adopted all of the claimant's subjective complaints without any objective verification." (Doc. 16-3, 24)..

Trego points to several examples in the record she believes show some objective evidence of symptoms of impairments assessed by Dr. Brown-King and disregarded by the ALJ. (Doc. 19, 11). She cites Dr. Brown-King's negative assessment of her appearance, mental status, and hygiene in November 2010, her "blunt affect" for three months in 2011, and poor judgment and insight in March 2012 and would have these read as both contradictory to the ALJ's recitation of times Dr. Brown-King evaluated her appearance, mental status, affect, and judgment more positively and as "observable psychological abnormalities" supporting limitations in activities of daily living and inability to work because of depression and anxiety. (Doc. 19, 11). This is insufficient to show a lack of substantial evidence. Her burden is not to show there is some amount of contradictory

evidence in the record that could ultimately lead others to draw a different conclusion than the ALJ in this case, but that there is no more than a "mere scintilla" of evidence supporting the decision the ALJ actually made. *Newton*, 209 F.3d at 452.

Contrary to Trego's assertion the ALJ "disregarded Dr. Brown-King's longstanding, frequent[,] and comprehensive treatment …, her specialization, and the presence of corroborating opinion evidence …[,]" the ALJ's decision details the consideration paid to the factors required by the regulations. (Doc. 19, 11). The ALJ specifically addressed each of these factors in the text of his decision. (Doc. 16-3, 24). Instead, Trego's main issue with the ALJ's treatment of Dr. Brown-King's evidence seems to be that the ALJ did not consider the psychiatrist's notes on Trego's self-reported symptoms as "objective evidence" supporting limitations she believes were properly assessed by Dr. Brown-King. (Doc. 19, 11). Although she does not cite which "other evidence [the ALJ] was obliged to consider carefully" but did not, she does refer to "evidence in the treatment notes apart from the mental status examinations[.]" (Doc. 19, 12). This is best interpreted as referring to forms labeled "Encounter Report[,]" where Dr. Brown-King summarizes Trego's self-reported behaviors and attitudes since the last visit, evaluates her demeanor and thought process, and assesses conditions and proscribes a treatment plan. (Doc. 16-12, 5; 9; 20). There is another form labeled the same way which seems to be from an initial visit, and starts with a similar self-report about current emotions and behaviors, then summarizes psychiatric, medical, family, and social histories before setting out a mental status evaluation, assessing conditions, and proposing a treatment plan. (Doc. 16-10, 38-39).

Trego's contention seems to be that anything in these encounter reports should qualify as Dr. Brown-King's medical opinion entitled to full consideration by the ALJ, whether it is phrased as notes on Trego's self-reported subjective experience – "she reports[,]" "she denies[,]" "she

feels" – or Dr. Brown-King's evaluations, assessments, and treatment plans. This is plainly not a viable proposition – physicians surely are allowed to record a patient's assertions without endorsing them as medical fact. There is no other coherent reading of Trego's argument that "[b]y rejecting, out of hand, any evidence in the treatment notes apart from the mental status examinations, the ALJ failed to evaluate other evidence he was obliged to consider carefully." (Doc. 19, 12). Showing Dr. Brown-King wrote some treatment notes that describe her appearance and affect more negatively than others does not mean the ALJ failed to properly contextualize and consider the opinion of Dr. Brown-King. Trego has failed to show the ALJ's finding that Dr. Brown-King's evidence

> provide[s] no objective support for the conclusions … as the record shows that the claimant consistently demonstrated normal thought processes and content, a pleasant and cooperative demeanor, good eye contact and good insight/judgment upon examination, with no report of objectively observed symptoms of significant depression or anxiety, inhibited social interaction, or reliance upon her husband

is unsupported by substantial evidence or the result of incorrect legal standards. (Doc. 16-3, 24).

### 2. Nurse Practitioner Russell

As detailed above, a nurse practitioner may provide evidence about the limits imposed by an impairment assessed by a physician or other acceptable source, but cannot herself assess an impairment. SSR 06-03P, 2006 WL 2329939 at *1-2. Here, Trego argues Russell supplies evidence of limitations because of fatigue, widespread pain, inability to concentrate for longer than fifteen minutes, inability to maintain mobility without an assistive device, and inability to accept instructions, maintain regular attendance or punctuality, and "deal appropriately with the ordinary stresses of regular work activity[,]" but does not indicate which physicians assessed the impairments causing those limitations (Doc. 19, 13-14; citing Doc. 16-3, 36-41).

Trego asserts here again that the ALJ improperly found Russell relied solely on subjective complaints and discounted her evidence when there were also objective tests and measurements supporting the assessed limitations. (Doc. 19, 11). So Trego's burden, again, is to show there is not substantial evidence supporting the ALJ's treatment of those limitations or that it was based upon legal error, not that there may be some more objective medical evidence that could be read to support the limitations proposed by Russell.

The ALJ stated he

> considered this family nurse practitioner's opinion in accordance with the provisions of SSR 06-03p. However, the opinion as to specific functional deficits the claimant may have is based upon a recitation of the claimant's subjective complaints to the family nurse practitioner, most of which were never verified upon objective examination by this – or any other – clinical source. For example, while the claimant has repeatedly complained of … poor concentration and memory loss, this examiner never reported observing any difficulty, such as an inability to recite symptoms or list her medications, during examinations. Further, multiple mental status evaluations revealed no deficits in memory and concentration, and the family nurse practitioner never confirmed clinically that the claimant has most of the impairments she listed. The recitation of symptoms was also clearly based solely on the claimant's subjective complaints.

(Doc. 16-3, 28). The relevant opinion is a form which seems designed to set out a *prima facie* case for disability through a series of short blanks and checkboxes.[2] (Doc. 16-13, 36-41). Russell does not tie these limitations to impairments assessed by an acceptable medical source, or even to any

---

[2] The form asks if the answerer provides primary care and mental health care, then asks for a listing of diagnoses and symptoms, asks in yes-no format whether the claimant has issues with fatigue, "widespread pain that has persisted for at least three months[,]" and "at least eleven positive tender points on physical examination," then to check a box either yes or no indicating whether the "impairments described above affect Ms. Trego's ability to maintain attention and concentration for extended periods[,]" "how long would Ms. Trego likely be able to maintain the concentration needed to complete tasks in a work environment[,]" whether "the impairments described above affect Ms. Trego's ability to complete a normal workday or workweek without interruptions from pain, fatigue, or psychologically-based symptoms[,]" if "her pain, fatigue, or psychologically-based symptoms [would] likely take her off-task more than 20% of the time during a typical workday or workweek[,]" whether "the psychological/psychiatric impairments described above affect Ms. Trego's ability to interact with other people in a workplace[,]" if "Ms. Trego [would] be able to consistently accept instructions and respond appropriately to criticism from supervisors[,]" "consistently be able to perform activities within a schedule, maintain regular attendance, and be punctual[,]" and "be able to deal appropriately with the ordinary stresses of regular work activity[.]"

specific impairments at all, instead offering a laundry list of conditions and symptoms without any context or explanation. (Doc. 16-13, 41). The entire form could fairly be summarized by asking Russell to list the diagnoses and symptoms reported to her by Trego, asking Russell if she thought Trego was disabled, and finally asking for "the clinical bases for the answers provided and any additional comments[.]" (Doc. 16-13, 41). Although the handwritten response to this last question is ambiguous, it appears to read "patient unable to attend to tasks, loses train of thought, describes disorganization at home, mood/[illegible] not consistent [illegible.]" (Doc. 16-13, 41). If these are all of the "clinical bases for the answers" to the checkbox and other form questions, it is hard to believe Russell had any basis other than Trego's self-reported experiences for assessing those limitations, much less find that the ALJ's determination on this point is unsupported by substantial evidence.

Social Security regulations provide that opinions from "other sources" such as a nurse practitioner "must be adjudicated on [their] own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." SSR 06-03p, 2006 WL 2329939 at *5. Trego's burden is to show that the ALJ's reading of Russell's opinion as based entirely on Trego's subjective complaints and therefore lacking significant probative value is without substantial evidence to support that finding. There may be some objective record evidence that could be read to support Russell's opinion as to these limitations from some properly established impairments, but as the opinion itself seems to indicate there are no more clinical bases for her opinions than Trego's subjective self-reporting about her conditions and symptoms, Trego has failed to meet her burden.

### 3. Dr. Cohen

Trego also claims the ALJ improperly rejected a limitation assessed by Dr. Cohen, a state agency consultative examiner. (Doc. 19, 12). She specifically alleges substantial evidence does not support the ALJ's determination that Dr. Cohen's opinion that she needed a walker for ambulatory support was based only on subjective complaints. (Doc. 19, 12). The ALJ characterized Dr. Cohen's assertion Trego needed a walker for additional support as a "gratuitous statement" since Dr. Cohen "reported no objective observation indicating that the claimant had any lower extremity weakness, impaired balance[,] or other neurological deficit which would corroborate this assertion ...." (Doc. 16-3, 18). In other words, the ALJ declined to consider a limitation assessed only by a consultative examining physician which was unsupported even by that physician's own notes. The ALJ earlier summarized Dr. Cohen's evaluation, saying

> the consultative examiner reported that the claimant's walker had not been prescribed but was needed for additional support, that she was able to walk a block at a reasonable pace over a rough/uneven surface, that she was able to climb a few steps at a reasonable pace with the use of a single handrail, that she had full use of the other upper extremity for carrying objects, and that she had unimpaired ability to sit, stand, handle objects, hear, speak[,] and travel, as well as unimpaired stamina.

(Doc. 16-3, 18). Read in this context, the ALJ's finding could be read as a resolution of an internal conflict or unintentional ambiguity in Dr. Cohen's opinion – could Trego both need the walker for support but be able to climb stairs using a handrail and carrying a load with the other hand?

Even if this were not the case, Trego's characterization of the ALJ's finding as substituting his own opinion for that of Dr. Cohen is misguided. The ALJ is performing exactly as one should – analyzing the entire medical record and interpreting the medical evidence to determine capacity to work. It is not reversible error for an ALJ to consider one specific element of an opinion as contrary to the balance of the medical evidence and decline to accept it as binding, especially when

the limitation is assessed only by a consulting source. Furthermore, any possible error in the finding that she required the walker for ambulation is harmless, as the ALJ assessed Trego with an RFC for a subset of sedentary work, and Trego has not shown a limitation to ambulation with a walker would impact the RFC as assessed and therefore the ultimate disability determination. Trego has not met her burden to show the ALJ improperly considered any medical opinion evidence or that any of his determinations are unsupported by substantial evidence.

### C. Symptoms and Objective Evidence

Trego also argues the ALJ violated Social Security regulations by discrediting her subjective description of symptoms. (Doc. 19, 13).

> No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.

SSR 96-7p, 1996 WL 374186. "[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements...." *Id.* But, "[a]n individual's statements about the intensity and persistence of pain or other symptoms ... may not be disregarded solely because they are not substantiated by objective medical evidence." *Id.* "[N]ot all pain is disabling" and "subjective evidence need not be credited over conflicting medical evidence." *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

There may be some tension in the standards described above – no symptom can provide a basis for a disability determination without medical signs and laboratory findings indicating an impairment that could cause such a symptom, but assertions about levels and persistence of pain may not be disregarded only because there is no objective medical evidence. However, this needle

is appropriately threaded when an ALJ discusses the claimant's subjective complaints, determines whether a medically determinable impairment could produce those symptoms, and then weighs the subjective evidence against the weight of record evidence as a whole in crafting the RFC. Trego's reliance on one phrase from the regulations is troubling. She insists a "claimant's statements about symptoms must not be rejected solely because the available objective medical evidence does not substantiate those statements." (Doc. 19, 13 citing 20 C.F.R. § 404.1529(c)(1-2). This does not indicate the opposite is true, however – a claimant's subjective complaints about symptoms do not override the role of the ALJ to weigh all available evidence and execute their duties as a factfinder.

Here, far from finding only that Trego's subjective complaints about limitations as a result of depression, anxiety, and pain were invalid because there was no objective medical evidence, the ALJ noted which of the symptoms reported by Trego he felt were inconsistent with her testimony about her daily life, which were described by Trego as assessed or prescribed by physicians without any record evidence of physicians doing so, and concluded that "to the extent she has alleged the complete inability to sustain any form of work activity at all, the claimant is simply not credible." (Doc. 16-3, 33 citing 20 C.F.R. §§ 404.1529; 416.929). The ALJ considered Trego's subjective complaints about pain and other symptoms, made a determination about which impairments may have caused those symptoms, and considered the subjective reporting of symptoms in the context of the record evidence as a whole. In this case, the ALJ's decision tracks exactly with the applicable regulations. The Administration advises claimants that

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. We will consider all of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily

> living and your ability to work. However, statements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you. We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

20 C.F.R. 404.1529(a). Trego has failed to show that the ALJ's determination about her subjective complaints is the result of legal error or unsupported by substantial evidence.

### D. Residual Functional Capacity

Trego finally claims correcting the errors alleged above would result in a more restrictive RFC than the one assessed by the ALJ in this case. (Doc. 19, 14). As detailed above, the ALJ's decision is supported by substantial evidence, and furthermore, any potential errors are harmless, as they would not alter the RFC or otherwise result in a different disability determination. As such, Trego has not shown the decision of the ALJ should be reversed.

### V. CONCLUSION

Trego has failed to show that the decision of the Commissioner is unsupported by substantial evidence or the result of incorrect legal standards. Considering the above, it is **RECOMMENDED** the decision of the Commissioner be **AFFIRMED** and Trego's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated April 24, 2017.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE